UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

────────────────────────────────────

ANDREW WALZER,

                     Plaintiff,

    - against -

TOWN OF ORANGETOWN, *et al.*,

                    Defendants.

────────────────────────────────────

13-CV-7971 (CS)

**OPINION & ORDER**

Seibel, J.

      Before the Court is Defendants' Motion to Dismiss, filed on September 18, 2014.  (Doc. 33.)  For the reasons stated below, the motion is GRANTED.

## I.  **Background**

      For purposes of this Order, I accept the facts, but not the legal conclusions, as set forth in the Amended Complaint ("AC"), (Doc. 23), and the documents that Plaintiff cites as exhibits therein, which can be considered on a motion to dismiss, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).[1]

      Plaintiff is Andrew Walzer, a resident of the Town of Orangetown (the "Town") in Rockland County, New York.  (AC at 1.)  Defendants are the Town; Town police officers Holihan, Goldfarb, Grunski, and other unnamed officers; Rockland County (the "County"); the County District Attorney's Office; Town Judge Paul Phinney; and Plaintiff's former tenant,

────────────────────────

[1] Defendants attached numerous documents as exhibits to a declaration in support of their motion to dismiss.  (*See* Doc. 34.)  I can take judicial notice of the few of these documents that are public records (for the fact that the statements therein were made, not for the truth of those statements).  *See Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005).  But as to the remainder of the documents, because none of them were discussed in any detail by Plaintiff in the AC (with the exception of the few documents that were also provided by Plaintiff as exhibits to the AC, and which I cite herein using Plaintiff's exhibit numbers, *see infra* note 3), they are not "integral" to the AC and cannot be considered on a motion to dismiss.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

Aniska Baptiste.  The Court interprets the AC as also asserting claims against County District Attorney Investigator Mulkeen and Town police officers Polazolo, Stratton, and McDowell, all of whom are mentioned in the AC but not listed as defendants in the case caption.[2]

Plaintiff has a long history of interaction with local law enforcement.  In late 2002 or 2003, Plaintiff reported to the Town police that he was the victim of a forgery scheme by several financial companies (who had sold some of his stocks to meet margin calls without his permission), but the Town police, County District Attorney's Office, and Investigator Mulkeen refused to investigate the matter.  (*Id.* at 7-8.)  In 2007, after Plaintiff suffered injuries while bicycling on a sidewalk in the Town, he sued the Town (and others).  (*Id.* at 1; P's Ex. 3.)[3] Plaintiff believes that many of the events that followed were influenced by the Town's "prejudice" against him for having filed this lawsuit.  (AC at 3.)

In early July 2008, Plaintiff made a criminal complaint to the County District Attorney's Office that his ex-girlfriend Paula Colombo had threatened and harassed him.  (*Id.* at 1; P's Ex. 5a.)  On July 14, 2008, when Plaintiff showed up at Ms. Colombo's arraignment, Ms. Colombo informed the presiding judge, Judge Phinney, that she had a New Jersey restraining order against Plaintiff and asked that he be arrested for violating that order by coming near her.  (AC at 16-17.)

---

[2] Plaintiff has stipulated to the discontinuance of his claims against County District Attorney Thomas Zugibe (even though Zugibe was never named as a defendant), County Assistant District Attorney Tanya Gale, and the unnamed other County prosecutors.  (*See* Plaintiff's Response and Opposition to Defendants' Motion to Dismiss ("P's Opp."), (Doc. 50) 3.)

[3] "P's Ex." refers to one of the exhibits to the AC that Plaintiff provided to the Court on December 17, 2014.  (*See* Doc. 61.)  On the same date, Plaintiff also provided the Court with another set of documents – exhibits to P's Opp. (*See id.*)  A few pages of two of these documents – P's Opp. Ex. PF at 3; P's Opp. Ex. PI at 4-8 – are public records of which I can take judicial notice (although again, not for their truth).  *See Munno*, 391 F. Supp. 2d at 268.  As to all of the other documents, however, because they were attached to or referenced in a brief, which is not a "pleading," I cannot consider them on a motion to dismiss without converting it to a motion for summary judgment, which I decline to do.  *See* Fed. R. Civ. P. 12(d); *Vail v. City of New York*, No. 12-CV-6125, 2014 WL 6772264, at *6 (S.D.N.Y. Dec. 2, 2014).  In any event, the outcome here would be the same even if they were considered.  I may consider a *pro se* plaintiff's statements in an opposition brief or in other submissions (like letters) to the extent that they are not inconsistent with his complaint, *see Vail*, 2014 WL 6772264, at *12, and I do so here.

In response, Town Police Officer Grunski charged Plaintiff with second-degree criminal contempt for violating the restraining order.  (*Id.* at 17; P's Ex. 6a.)  Months later, the week before Plaintiff's scheduled trial on the contempt charge, Judge Phinney dismissed the case based on his finding that Plaintiff had never been served with the restraining order and thus could not be held in contempt of it.  (AC at 17; P's Opp. Ex. PF at 3.)

On October 3, 2009, two police officers from Bergen County, New Jersey, came to Plaintiff's home to speak with him about a New Jersey family court case that involved him.  (AC at 14; P's Ex. 14)  Plaintiff asked the officers to leave his property and when they refused, he called the Town police to request that they either remove the officers or charge them with trespassing.  Town Police Officer Goldfarb "would not make these officers from New Jersey leave [Plaintiff's] property."  (AC at 14.)  According to the AC, because the officers were blocking Plaintiff's car in his driveway, he "had no choice but to submit to questioning" by them.  (*Id.* at 6; *see id.* at 14.)  Later that day, Plaintiff went to the Town police station to make a trespassing complaint against the New Jersey officers and was told by Officer Polazolo that he should instead speak to the supervisor of those officers.  (*See* P's Ex. 14.)  Plaintiff threatened to sue the Town if the police did not take a trespassing complaint from him, but they refused to do so.  (AC at 7.)

In approximately February 2010, Plaintiff called the Town police after Erika Maloney "smacked [him] in the head with an open hand . . . breaking [his glasses]" and then chased him around his front lawn with a snow shovel.  (*Id.* at 15.)  When officers arrived at the scene, they refused Plaintiff's request that they file assault charges against Ms. Maloney, instead charging her with harassment and also charging Plaintiff with harassment, which he alleges was "completely unfounded [and] retaliatory."  (*Id.*)  Plaintiff and Maloney later agreed to drop their

3

charges against each other at the request of the Town and the County District Attorney's Office. (*Id.* at 16.)

Later that year, Plaintiff called the police several times to report conflicts with Aniska Baptiste, a woman to whom Plaintiff rented a room in his house. (*See id.* at 11.) On September 7, 2010, Plaintiff called the Town police to request that they remove two of Baptiste's guests, who Plaintiff said "would have to trespass on his property to get to and from the leased apartment." (P's Ex. 13 at 1; *see* AC at 5) Town Police Officer Stratton (or "Strattner," according to a police report accompanying the AC), who responded to the calls, refused to remove the guests, and told Plaintiff that "leasing an apartment includes an implied easement across the landlord's property and that persons coming to and from the leased apartment did not commit a trespass." (P's Ex. 13 at 1.) After Plaintiff told Officer Stratton that if the guests were permitted to stay there "might be violence," (*id.* at 2), Stratton searched Plaintiff's wallet and pockets for weapons, (*id.*; *see* AC at 5). Plaintiff later clarified that he had meant to convey that he feared the guests would hurt him and not vice versa. (P's Ex. 13 at 2.)

Several weeks later, on October 3, 2010, when Baptiste's cousin visited her in her room in Plaintiff's house, Plaintiff entered the room and asked the cousin to leave, whereupon Baptiste "suddenly and violently threw a glass candle-jar at [Plaintiff's] head," concussing Plaintiff and causing a laceration that required him to get several stitches. (AC at 4-5; *see* P's Ex. 8.) Officers Goldfarb and Holihan, who responded to the incident, arrested Baptiste for assault and arrested Plaintiff for trespassing in Baptiste's room. (*See* P's Exs. 11, 12.) Plaintiff states that Officer Holihan "at first told [Plaintiff] he was being arrested because he had threatened to sue" Holihan earlier that day for failing to remove the trespasser from his property. (AC at 4; *see id.* at 12-13.)

4

Plaintiff alleges that that evening, after he was released, the police "arranged to have [Ms. Baptiste] . . . be in [Plaintiff's] dark nighttime driveway, . . . to cause problems [and] further put [his] life at risk." (*Id.* at 10.) After Plaintiff apparently became alarmed and drove away, Town Police Officer McDowell called Plaintiff's cell phone and asked him to drive back to his house and unlock the door for the officers who were trying to help Ms. Baptiste (who no longer had a key) retrieve her possessions from Plaintiff's house. (*Id.*) When Plaintiff pulled into his driveway, Officer Holihan "ordered [Plaintiff] to hand over his license and registration," "pushed [Plaintiff] into his car-door," threatened to arrest him, and wrote Plaintiff four traffic tickets (all of which were later dismissed after Officer Holihan failed to answer Plaintiff's discovery requests). (*Id.* at 10-11; *see* P's Exs. 16a, 16b.) Plaintiff then left his property for some period of time to rest at a neighbor's house. When he returned home, the police were gone, and Plaintiff found a broken chain door-guard on the door from the master bedroom to the main house that suggested to him that the police "had broken into . . . his house doing an illegal search." (AC at 11-12.)

On several occasions after the altercation with Ms. Baptiste, Plaintiff attempted to convince the County District Attorney's Office to prosecute Baptiste for a greater offense and to dismiss the trespassing charge against him. On January 4, 2011, Plaintiff went to the County District Attorney's Office to offer evidence related to the October 3, 2010 incident, including the glass candle jar that Baptiste threw at him and a statement from a witness to the incident. (*Id.* at 20; *see* P's Ex. 8.) Investigator Mulkeen refused to accept Plaintiff's evidence, asked him to leave, and threatened him with arrest if he did not comply. (AC at 20.) On March 22, 2011, Plaintiff filed a motion in New York Supreme Court requesting that the court order the County District Attorney to investigate and prosecute Baptiste for second-degree assault. (*Id.*; P's Ex.

21.)  Finally, in July 2011, Plaintiff brought copies of two criminal complaints that he had

drafted – one against Ms. Baptiste for assault and the other against her cousin for trespassing – to

the Town police station, but the police refused to accept them.  (AC at 9; *see* P's Exs. 22a, 22b.)

On an unspecified later date, the trespassing charge against Plaintiff was dropped "upon

Rockland ADA Ms. Gayle's motion, and [an] Orangetown Judge ordered it dismissed."  (Doc.

58 at 1.)

   In 2010, 2011 and 2013, Plaintiff requested that the Town provide him with copies of the

police reports related to the October 3, 2010 incident pursuant to the Freedom of Information Act

("FOIA"), but he was denied.  (AC at 18.)  He later received five police reports related to that

incident from counsel for the Town.  (*Id.*)

   Plaintiff alleges that, on October 27, 2010, Officer Holihan falsely reported to the Town

Building Department that Plaintiff was running an unlawful boarding house at his residence, (*id.*;

*see* P's Ex. 9), which allegedly caused the Town to charge Plaintiff with a criminal zoning

violation for an "[a]ccumulation of unlicensed vehicles and automobiles on a residential lot,"

(AC at 18; P's Ex. 24).  (Because the criminal zoning violation is dated October 2009, a year

before Holihan allegedly falsely reported Plaintiff to the Town Building Department, (*see* P's

Exs. 9, 24), these events could not have occurred as Plaintiff has described.)  After Plaintiff paid

a fine for the alleged violation, the Building Department "dropped the matter."  (AC at 19.)

   In April 2014, Plaintiff went to the Town police station with copies of "over 50

threatening and slanderous emails" from his estranged brother that showed that the brother had

made false accusations about Plaintiff to the New York State Tax Department and an April 1,

2014 letter that Plaintiff received from a U.S. Postal Inspector flagging the brother's latest

attempt to steal Plaintiff's identity.  (*Id.* at 8.)  The police officer at the front desk "agreed that

[the emails were] repeated and aggravated harassment and threats" but refused to take a complaint from Plaintiff because the emails were too old.  (*Id.*)

Plaintiff alleges that law enforcement's "multiple false retaliatory charges" against him and repeated refusal to investigate his criminal complaints, in addition to being retaliation for his 2007 lawsuit against the Town, form a pattern that demonstrates "gender prejudice against males if they bring criminal charges against a violent woman."  (*Id.* at 2-3.)

The Court interprets the AC as asserting a FOIA claim; Section 1983 claims for false arrest, malicious prosecution, failure to investigate and prosecute, use of excessive force, violation of Equal Protection, First Amendment retaliation, and illegal search and seizure (and *Monell* claims against the Town and County for these constitutional violations); a Section 1985(3) conspiracy claim; and a state-law battery claim against Ms. Baptiste.  Ms. Baptiste has not been served in this case; the other Defendants have moved to dismiss Plaintiff's claims against them.  (Docs. 31, 35, 54, 56.)

## II.  <u>Legal Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 129 S. Ct. at 1950.

In considering whether a complaint states a claim upon which relief can be granted, the court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determine whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.*  (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

While the law authorizes dismissal on these grounds, district courts "remain obligated to construe a *pro se* complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Thus, *pro se* complaints should be read with "special solicitude" and should be interpreted to raise the "strongest [claims] that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (emphasis in original) (internal quotation marks omitted).  But the accommodations made for *pro se* litigants are "not without limits."  *Hargett v. N.Y.C. Transit Auth.*, 640 F. Supp. 2d 450, 471 (S.D.N.Y. 2009).  *Pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

III.  **Discussion**

A.  **Statute of Limitations**

Plaintiff filed this case on November 8, 2013.  (*See* Doc. 1.)  Plaintiff has submitted papers explaining that he initially attempted to file on October 3, 2013, but was misled regarding the filing fee requirement.  (*See* P's Opp. 5-6; Doc. 59.)  Although Plaintiff gives no explanation for why he waited nearly a month to re-file, the Court for present purposes will accept as true his representation that he made a good-faith effort to file on October 3, 2013, and deem that to be the date on which this suit was commenced.  Even so, most of Plaintiff's claims concern events that occurred more than three years before that date and thus are barred by the applicable statute of limitations.  *See Jewell v. Cnty. of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990) (per curiam) ("New York's three year statute of limitations . . . governs § 1983 actions brought in federal district court in New York.").

Plaintiff's arguments that the limitations period should be tolled so as to permit these claims to go forward are unpersuasive.  Plaintiff argues for the application of the continuing-violation doctrine, (*see* AC at 21), but "as a general rule, courts in the Second Circuit [view] continuing violation arguments with disfavor," and do not apply it unless there are "compelling circumstances," *see Plumey v. New York*, 389 F. Supp. 2d 491, 498 (S.D.N.Y. 2005) (internal quotation marks and alteration omitted).  In any case, Plaintiff does not allege facts suggesting a continuing violation; rather, he pleads facts that involved widely disparate events and individuals.  Nor is the limitations period tolled by the fact that Plaintiff was unable to obtain copies of certain police reports until after commencing this litigation, as Plaintiff argues.  (*See*

P's Opp. 7.)  Plaintiff did not "discover" any of the alleged violations of his rights from those

reports and thus did not need them in order to file a timely suit.[4]

In conclusion, all claims related to events that occurred before October 3, 2010, are

barred by the statute of limitations.  To the extent that those claims are discussed below, it is only

for the sake of argument.

## B.  Claims for Failure to Investigate, Prosecute and Enforce

Plaintiff alleges that his constitutional rights were violated by the Town's and County

District Attorney's Office's refusals to investigate wrongdoing that he reported, to prosecute

those who victimized him, and to enforce the law on his behalf.  Specifically, Plaintiff argues

that one or more of Defendants:  (1) failed to investigate the forgery scheme that he reported in

2002 or 2003; (2) failed to enforce the trespassing law against the New Jersey police officers

who came to Plaintiff's residence in 2009; (3) failed to prosecute Erika Maloney for assault

(rather than merely harassment) in February 2010; (4) failed to enforce the trespassing law

against Aniska Baptiste's guests in September 2010; (5) failed to prosecute Baptiste for felony

assault and Baptiste's cousin for trespassing following the October 2010 incident; and (6) failed

to investigate Plaintiff's brother's harassment and identity theft scheme in 2014.  Only the latter

two claims are timely.

In any event, Plaintiff does not have a constitutionally protected right to a government

investigation of alleged wrongdoing.  *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 388 (E.D.N.Y.

---

[4] The one arguable exception is Plaintiff's claim that Officer Holihan "falsely [wrote the] Orangetown Building Dept. that I was using my house as an unlawful Boarding House, to cause me further problems with [the] Orangetown Building Dept.," culminating in the issuance of a zoning violation against Plaintiff, a claim that Plaintiff alleges he "could not [have] know[n] of" until he received a copy of Officer Holihan's police report containing the boarding house references.  (*See* AC at 19.)  Even if he did not know of Officer Holihan's role, however, he knew whether or not the alleged zoning violations were valid.  In any case, even if this claim were timely, it is factually impossible for the reason discussed at page 6 above and legally defective for reasons discussed below.

2013); *see Doe v. Mayor & City Council of Pocomoke City*, 745 F. Supp. 1137, 1139 (D. Md. 1990) ("The Court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime.  These are discretionary public duties that are enforced by public opinion, policy, and the ballot.")  And Plaintiff does not have standing to contest the non-prosecution of the alleged perpetrators.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see Leeke v. Timmerman*, 454 U.S. 83, 85-87 (1981); *Ostrowski v. Mehltretter*, 20 F. App'x 87, 90-91 (2d Cir. 2001) (summary order); *see also Weisshaus v. New York*, No. 08-CV-4053, 2009 WL 2579215, at *3 (S.D.N.Y. Aug. 20, 2009) ("Where a crime victim brings suit contesting the non-prosecution of the alleged perpetrator, courts have found that the victim lacks standing to do so.").[5]  Accordingly, each of Plaintiff's failure to enforce, prosecute or investigate claims fails as a matter of law.

### C. Malicious Prosecution Claims

Plaintiff alleges that one or more of Defendants maliciously prosecuted him when he was charged with (1) criminal contempt in July 2008, (2) a criminal zoning violation in 2009, (3) the harassment of Ms. Maloney in February 2010, and (4) trespassing in October 2010.

#### 1. Criminal Contempt

Plaintiff alleges that Judge Phinney and Police Officer Grunski maliciously prosecuted

---

[5] Plaintiff also argues that Investigator Mulkeen violated his rights by threatening to arrest him if he did not leave the County District Attorney's office when Plaintiff attempted to provide the District Attorney with evidence related to Plaintiff's altercation with Ms. Baptiste.  (*See* AC at 20.)  Plaintiff does not specify what constitutional right this conduct allegedly violated.  If he intended a First Amendment claim, he has no right to speak to public officials on a matter of private, not public, concern.  *See Wetzel v. Town of Orangetown*, 308 F. App'x 474, 476-77 (2d Cir. 2009) (summary order).  If he intends an Equal Protection claim, he has provided no comparators – *i.e.*, similarly situated persons who appeared unannounced at the County District Attorney's office (a non-public forum, *see Cornelius v. NAACP Legal Def. & Ed. Fund, Inc.*, 473 U.S. 788, 809-10 (1985)) and were permitted to stay indefinitely.  *See Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135 (E.D.N.Y. 2013) ("To maintain either a selective enforcement or class of one claim, plaintiff[] must allege the existence of similarly situated comparators.").  In any event, Plaintiff's own submissions, (Doc. 53 at 1; Doc. 58 at 3), make plain that the District Attorney was concerned about speaking to Plaintiff without his having counsel present – a reasonable concern given that Plaintiff was at that time a defendant in the trespassing case arising from his altercation with Ms. Baptiste.

him when they charged him with contempt for violating Paula Colombo's New Jersey restraining order against him.  According to the AC, when Plaintiff showed up at Ms. Colombo's court appearance in July 2008, Colombo told Judge Phinney that she had a restraining order against Plaintiff and that "he's not supposed to be near me, he's in this court, arrest him."  (AC at 16.) In response, Officer Grunski "sign[ed] a false charge against [Plaintiff] of 'Contempt of Court' for disobeying [the] Restraining Order, despite on its face per the Bergen Cty. NJ Sargent's [*sic*] own sworn affidavit, I'd never been served it."  (*Id.* at 17.)  The week before Plaintiff's trial for contempt, "Judge Phinney finally dropped the case . . . because per the NJ Court Officer's signature, I had not been served the [restraining] order, hence I could not be held in contempt of it."  (*Id.*; *see* P's Opp. Ex. PF at 3.)

Plaintiff's claim must be dismissed.  Judge Phinney's alleged misconduct – presiding over the ill-founded criminal contempt charge – is judicial conduct for which Phinney has absolute immunity.  *See Stump v. Sparkman*, 435 U.S. 349 (1978).  And although I reach no final conclusion on the matter, Officer Grunski may be entitled to qualified immunity for his role in the contempt prosecution.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied:  (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (internal quotation marks omitted).  "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of [the charge] – that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'"  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Lennon v. Miller*, 66 F.3d 416, 423-24 (2d Cir. 1995)).  Based on the facts pleaded in the AC, Officer Grunski had at least arguable probable

cause to charge Plaintiff with contempt because it was objectively reasonable for him to rely on Ms. Colombo's representation at the time that she had a valid restraining order against Plaintiff. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness."); *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed.").  Plaintiff argues that a New Jersey official's affidavit demonstrated that Ms. Colombo's restraining order was not effective because it had not been served on Plaintiff, (AC at 17), but it is not clear that Officer Grunski had knowledge of or access to that affidavit at the time that he signed the charge or that Grunski otherwise knew that the restraining order had not been served.[6]  In any event, this claim is time-barred.

### 2. Zoning Violation

Plaintiff alleges that the Town maliciously prosecuted him for the "[a]ccumulation of unlicensed vehicles and automobiles on a residential lot," a violation of the Town code.  (*See* P's Ex. 24.)

To establish a claim for malicious prosecution a plaintiff must show, among other things, the initiation or continuation of a criminal proceeding against the plaintiff by the defendant and the termination of the proceeding in plaintiff's favor.  *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997).  Plaintiff cannot make out a malicious prosecution claim because he cannot show that the zoning violation proceeding terminated in his favor.  In fact, Plaintiff states in the AC that the

---

[6] Officer Grunski may have had a copy of the Order, because in the charging instrument he gave as the date the Order was served on Plaintiff the date that the Order reflects it was served on Ms. Colombo.  (*Compare* P's Ex. 6a *with* P's Opp. Ex. PF.)  On the other hand, he may have instead gotten the date from Ms. Colombo.

proceeding terminated after he paid a fine, (AC at 19), which demonstrates that it did *not* end in

his favor.  *See Fils v. City of Aventura*, 768 F. Supp. 2d 1188, 1214 (S.D. Fla. 2010) (dismissal of

criminal case conditioned on criminal defendant's agreement to pay a fine, take anger

management classes, and perform community service is a termination "suggesting that the

charges had merit, not the other way around.").  Accordingly, this malicious prosecution claim

too fails as a matter of law.  It is also time-barred.

### 3.  Harassment of Erika Maloney

Plaintiff alleges that Defendants maliciously prosecuted him for harassing Erika Maloney

in 2010.  This claim also fails because, as Plaintiff states in the AC, he dropped his charges

against Ms. Maloney, and she dropped hers against him, at the request of the Town and County

District Attorney's office.  (AC at 16 ("Because Ms. Maloney later apologized to me, and I had

not suffered any cuts needing medical attention from her assaulting me . . . , I agreed to

Orangetown and Rockland DA's request that both sides drop charges.").)  Because, by Plaintiff's

own account, the charges were dropped "pursuant to a compromise with the accused," *Rothstein

v. Carriere*, 373 F.3d 275, 289 (2d Cir. 2004) (internal quotation marks omitted), Plaintiff "has

not demonstrated that the criminal proceedings against him were resolved in his favor based on a

determination on the merits."  *Boans v. Town of Cheektowaga*, 5 F. Supp. 3d 364, 385-86

(W.D.N.Y. 2014).[7]  Moreover, this claim, too, is time-barred.

### 4.  Trespassing

Plaintiff alleges that Officer Holihan and Officer Goldfarb maliciously prosecuted him

---

[7] Plaintiff also cannot make out a malicious prosecution claim against the Town or Officer Holihan for the four traffic tickets that Plaintiff was issued, as Plaintiff does not allege that Officer Holihan lacked probable cause to issue those tickets, which were for "having moved from lane unsafely," vehicle equipment violations, and lack of a vehicle inspection certification.  (*See* AC at 11; P's Exs. 16a, 16b).  *See Murphy*, 118 F.3d at 947 (lack of probable cause for commencing the proceeding is an element of a malicious prosecution claim).

for trespassing in Ms. Baptiste's rental unit on October 3, 2010.  Holihan and Goldfarb have

qualified immunity, however, because there was at least arguable probable cause for the charge.

Ms. Baptiste reported to the police (and also affirmed under penalty of perjury) that Plaintiff "did

knowingly enter [her] private residence unannounced and without [her] permission," (P's Ex.

12), an objectively reasonable representation on which the officers were entitled to rely.  *See*

*Martinez*, 202 F.3d at 634; *Miloslavsky*, 808 F. Supp. at 355.

Plaintiff's arguments about the status of Ms. Baptiste's lease do not undermine the

officers' qualified immunity defense.  Plaintiff states in the AC that by the date of his alleged

trespassing, Ms. Baptiste had "declined to renew [her lease] and had already moved out, but had

left stuff."  (AC at 11.)  He contradictorily asserts that the altercation took place "in her room at

my house."  (Doc. 53 at 3.)  Plaintiff also argues that because Ms. Baptiste had engaged in

prostitution while on the property, her lease was void under New York Real Property Law

Section 231.  (P's Opp. 22-23.)  But even assuming Ms. Baptiste's lease was not legally effective

at the time that Plaintiff allegedly entered her unit without her permission, the officers were

entitled to rely on Ms. Baptiste's representation that she was at that time leasing the unit and that

she had not permitted Plaintiff to be in it.[8]  Police officers are entitled to rely on a victim's

representations where there is no reason to doubt her veracity.  *See Armatas v. Maroulleti*, No.

08-CV-310, 2010 WL 4340437, at *7 (E.D.N.Y. Oct. 19, 2010).  Even though Ms. Baptiste had

allegedly assaulted Plaintiff, the officers were not required to discredit Ms. Baptiste, given that

assault is not an offense of dishonesty, *see Lewis v. Velez*, 149 F.R.D. 474, 481 (S.D.N.Y. 1993),

---

[8] In his opposition, Plaintiff adds a new fact not in the AC – that Ms. Baptiste had called Plaintiff and invited him into her unit and thus he had not "come in un-announced."  (*See* P's Opp. 16.)  But Plaintiff does not allege that he told the officers at the time of his arrest that Ms. Baptiste had invited him in such that they could consider this information before making the arrest.  And even if he had told them, under the circumstances presented, the officers were entitled to believe Ms. Baptiste instead of Plaintiff.  *See Martinez*, 202 F.3d at 634-35.

and there is no reason to believe that Ms. Baptiste falsely denied throwing an object at Plaintiff or lied to the officers about any part of her story, *cf. United States v. Persico*, No. 10-CR-147, 2012 WL 2017224, at *6 (E.D.N.Y. June 4, 2012) (whether informant had been involved in crime of dishonesty is relevant to probable cause determination made using that informant's tip). Plaintiff does not claim that he and Baptiste gave conflicting accounts of the altercation to the police, but even he did, the police are permitted to rely on one account over the other.  *See Crews v. Cnty. of Nassau*, 996 F. Supp. 2d 186, 205-06 (E.D.N.Y. 2014) (collecting cases).  Finally, the allegation that "Police Officer Holihan at first told [Plaintiff] he was being arrested because he had threatened to sue," (AC at 4), does not change the fact that Holihan had arguable probable cause to charge Plaintiff with trespassing.[9]  The existence of probable cause is an objective test that does not turn on the officer's subjective intent.  *See Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010).

**D.  <u>False Arrest</u>**

Plaintiff's claim that he was falsely arrested for trespassing on October 3, 2010, fails for the same reason that his malicious prosecution claim related to that same incident fails – as discussed above, Officers Holihan and Goldfarb had arguable probable cause for the arrest, and thus are protected by qualified immunity.

**E.  <u>Equal Protection Claim</u>**

Plaintiff alleges that he was denied equal protection of the law because the Town and County District Attorney's Office, together with his female assailants, "cooked up" a series of

---

[9] Plaintiff also argues that he should not have been arrested for trespassing because he was in his own house.  (AC at 12.)  But Plaintiff provides no legal authority – neither New York law nor a provision of his lease – suggesting that he was permitted unfettered access to the tenant's rental unit.  At minimum, an officer of reasonable competence could have thought that Plaintiff had "knowingly enter[ed] or remain[ed] unlawfully in a dwelling," *see* N.Y. Penal Law § 140.15(1); *Jenkins*, 478 F.3d at 87.

"false retaliatory charges" against him based on their "institutional gender prejudice plus the Town's prejudice [against Plaintiff for] having sued them prior for [his bicycling] accident." (AC at 3.)  Whether this is construed as a gender-based selective enforcement claim or as a "class of one" claim based on Defendants' alleged vendetta against Plaintiff, Plaintiff has provided no facts that support it.  While it does seem that Plaintiff has had an unusual number of conflicts with members of the opposite sex, there is nothing about the resolution of those matters that suggests that the various officials involved made their decisions based on gender.  Plaintiff merely offers "labels and conclusions" – that the Town and County District Attorney's office "don't take violence done by women seriously," (*id.* at 3), would have acted differently "if the genders had been reversed," (*id.*), and had long been prejudiced against Plaintiff, (*id.* at 4) – that are insufficient to state a claim.  *See Twombly*, 550 U.S. at 555.[10]

## F.  First Amendment Retaliation Claim

Plaintiff alleges that the Town police and County District Attorney's Office retaliated against him for filing a personal injury suit against the Town.  (*See* AC at 1-2, 13.)  A claim based on any of the alleged retaliatory acts that occurred before October 2010 is time-barred. *See Smith v. N.Y.C. Dep't of Ed.*, 524 F. App'x 730, 732 (2d Cir. 2013) (summary order).  And as to later acts, it is simply not plausible that they were caused by Plaintiff's suit, which was filed in 2007, (*see* P's Ex. 3), and dismissed as against the Town in April 2009, (*see* Doc. 34 Ex. F). *See Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist.*, 11 F. Supp. 3d 348, 368 (E.D.N.Y. 2014) ("[T]he span of one year between Plaintiff's protected conduct and the adverse actions taken against him is too attenuated to support an inference of retaliation.").  Plaintiff also

---

[10] Because Plaintiff also fails to plead any facts showing that Defendants "acted with class-based, invidiously discriminatory animus," *Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir. 1989), he fails to state a Section 1985(3) claim for conspiracy to interfere with constitutional rights.  (*See* AC at 3, 19.)

cannot make out his retaliation claim because he does not allege that any of the individuals involved were even aware of his lawsuit.  *See Pavone v. Puglisi*, 353 F. App'x 622, 625 (2d Cir. 2009) (summary order) ("[A] plaintiff must still allege [in addition to causation] that defendants were aware of the protected activity.").

G. **Fourth Amendment Claims**

Plaintiff alleges that the Town police violated his Fourth Amendment rights, (1) on September 7, 2010, when Officer Stratton searched his pockets and wallet after Plaintiff called the police to request that Ms. Baptiste's guests be removed from his house, (2) on October 3, 2010, when Officer Holihan stopped him for his license and registration and allegedly used excessive force by pushing Plaintiff into his car door, and (3) later on October 3, 2010, when the police allegedly searched part of Plaintiff's house as evidenced by the broken chain guard Plaintiff later found on the door to the master bedroom.

Plaintiff's first two Fourth Amendment claims fail because the officers involved each had at least arguable probable cause and thus qualified immunity.[11]  According to the police report on the September 7, 2010 incident (provided by Plaintiff as an exhibit to the AC), Officer Stratton searched Plaintiff – patted him down, "felt a bulge in his right rear pocket . . . removed the wallet [and] opened it to ensure that it did not contain an edged weapon" – immediately after Plaintiff told him that if he did not make Ms. Baptiste's guests leave, there "might be violence."  (P's Ex. 13 at 2.)  Officer Stratton was permitted to conduct this brief search for weapons because Plaintiff's comment – reasonably interpreted as menacing – supported a reasonable belief that Plaintiff posed a threat to public safety.  *See Ybarra v. Illinois*, 444 U.S. 85, 93 (1979); *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

---

[11] The first claim is also untimely.

On October 3, 2010, Officer Holihan was permitted to request and examine Plaintiff's license and registration when giving Plaintiff four traffic tickets.  As Plaintiff does not allege that the tickets were unfounded, (*see* AC at 10-11), Holihan's traffic stop and request for Plaintiff's driving-related documents were both proper, *see United States v. Graham*, No. 08-CR-6259, 2009 WL 4110370, at *7 n.9 (W.D.N.Y. Nov. 23, 2009).  Plaintiff's excessive force claim against Officer Holihan for "push[ing Plaintiff] into his car-door" during this interaction, (*see* AC at 10-11), must be dismissed because Plaintiff has not alleged that he suffered any injuries as a result of Holihan's actions.  *See Sethi v. Nassau Cnty.*, No. 11-CV-6380, 2014 WL 2526620, at *5 (E.D.N.Y. June 3, 2014) (push or shove that causes no injury cannot support excessive force claim) (collecting cases).

Additionally, Plaintiff does not provide sufficient facts to state his third Fourth Amendment claim – that the police illegally entered and searched his house on the night of October 3, 2010 after he left to visit a neighbor.  Plaintiff states only the following:  "When [he] returned after midnight, he found Orangetown Police had irresponsibly left th[e] rear door to his house's master bedroom open, plus they had broken into the rest of his house doing an illegal search (via broken guard chain on door from that bedroom into the main house)."  (AC at 11-12.) Plaintiff pleads a single fact – that upon returning home he found a broken chain on the door between a bedroom (apparently the rental unit) and the main house.  This scanty description – which lacks information about, among other things, when Plaintiff had last seen the chain unbroken, who was present when it was broken, whether the door had any other locking mechanisms in use, and whether anyone actually entered his portion of the house – is insufficient to permit the Court to "draw the reasonable inference that the [police are] liable for the misconduct alleged."  *See Iqbal*, 556 U.S. at 678.

### H. **Other Claims**

#### 1. FOIA Claim

Plaintiff's FOIA claim fails as a matter of law because FOIA only applies to federal

entities, not to any of Defendants.  *See* 5 U.S.C. §§ 551(1), 552(f) (defining "agency" as certain

federal entities); 5 U.S.C. § 552(a)(3)(A) (directing "each agency" to make certain records

available upon request); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999)

("[I]t is beyond question that FOIA applies only to federal and not to state agencies").[12]

#### 2. *Monell* Claims

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) "does not provide a separate cause of

action for the failure by the government to train its employees; it *extends* liability to a municipal

organization where that organization's failure to train, or the policies or customs that it has

sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d

207, 219 (2d Cir. 2006) (emphasis in original).  Plaintiff's *Monell* claims against the Town and

the County fail for two reasons.  First, because the Court has dismissed all of Plaintiff's other

constitutional claims, there is no underlying violation on which to extend liability to either the

Town or the County.  Second, Plaintiff has pleaded no facts in support of his *Monell* claims.  The

closest Plaintiff comes is alleging a pattern of gender-based decision-making on the part of Town

police officers, but the facts he provides do not, as discussed earlier, support that allegation.

#### 3. RICO Claim

Plaintiff alleges that the Town's "false allegation of my running a boarding house out of

my home . . . satisfies RICO," the Racketeer Influenced and Corrupt Organizations Act.  (*See*

---

[12] Plaintiff confirms in his opposition that he did not intend to sue under New York's Freedom of Information Law. (*See* P's Opp. 25).  If Plaintiff had, I would decline to exercise supplemental jurisdiction over that claim. (*See infra* Part III.H.4.)

AC at 19.)  But Plaintiff fails to state a RICO claim because he alleges no facts supporting the existence of an "enterprise" within the meaning of 18 U.S.C. § 1961(4), nor facts from which a pattern of racketeering activity could be inferred.  *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 173-182 (2d Cir. 2004).

### 4.  State-law Battery Claim

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's state-law assault claim against Ms. Baptiste (who in any event has not been served), or over any other state claims Plaintiff may intend to state.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).

## IV.  <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint once.  (*See* Docs. 1, 23.)  This amendment

followed a pre-motion letter, (Doc. 9), and a pre-motion conference, (*see* 5/14/14 minute entry),

both of which flagged for Plaintiff the bases on which his original complaint would need to be

remedied in order to survive a motion to dismiss.  Plaintiff's failure to fix these deficiencies,

after being provided with full notice of them, is alone sufficient ground to deny leave to amend

*sua sponte*.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y.

2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007).

Moreover, leave to amend here would be futile.  In his opposition to Defendants' motion,

Plaintiff requests the opportunity to amend again to add a new allegation – that Town police in

2014 did not "arrest[] an admitted home break-in perpetrator nor properly investigat[e] the

burglary" of Plaintiff's house.  (*See* P's Opp. 1.)  As discussed above, however, the victim of a

crime does not have a right to force the government to investigate the crime or arrest the alleged

perpetrator.  *See Naples*, 972 F. Supp. 2d at 388; *Doe*, 745 F. Supp. at 1139.  Thus, Plaintiff's

request for leave to add this allegation to the AC is denied as futile, because even with this new

fact, the complaint would still not survive a motion to dismiss.

Additionally, for all but one of Plaintiff's claims, my reasons for dismissal are

substantive, and better pleading would not lead to a different result.  *See Ariel (UK) Ltd. v.

Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (district court did

not exceed its discretion in not *sua sponte* granting leave to amend where plaintiff had already

amended complaint once and amendment would have been futile); *Cuoco v. Moritsugu*, 222 F.3d

99, 112 (2d Cir. 2000) (leave to amend should be denied as futile where problem with complaint

is substantive and better pleading would not cure it); *Payne v. Malemathew*, No. 09-CV-1634,

2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his

pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to

amend *sua sponte*.").  Accordingly, given that there is no indication that Plaintiff is in possession

of facts that could cure the problems,[13] *see Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011),

Plaintiff has already had an opportunity to amend his complaint, and the only requested

amendment is futile, I decline to grant Plaintiff leave to amend *sua sponte* on any issue not

related to the one claim that could conceivably benefit from better pleading:  Plaintiff's Fourth

Amendment claim that the Town police illegally entered and searched his house on the night of

October 3, 2010.  If Plaintiff is in possession of facts plausibly suggesting that the police broke

into and searched parts of the house other than where Ms. Baptiste's belongings were, Plaintiff

may, on or before May 7, 2015, seek leave to amend the AC, including in his application a copy

of a proposed Second Amended Complaint alleging only that claim.[14]  If Plaintiff has not made a

motion by that date, this case will be closed.

## V.   Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED.  The Clerk

of Court is respectfully directed to terminate the pending motion, (Doc. 33).

**SO ORDERED.**

Dated:  April 7, 2015
        White Plains, New York

_____
                    CATHY SEIBEL, U.S.D.J.

---

[13] In so concluding, I have considered not only Plaintiff's opposition to the motion but numerous other submissions, including several filed after Plaintiff's opposition.  (*See* Docs. 53, 58-59, 61.)

[14] Should Plaintiff be successful on this Fourth Amendment claim, his monetary recovery will likely be limited, as the Second Circuit has stated that "[i]n a § 1983 suit, constitutionally invalid police conduct that by itself causes little or no harm is assessed on ordinary principles of tort causation and entails little or nominal damages." *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999).